### UNITED STATES DISTRICT COURT FOR THE
### NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JAIMEE N. ESPINAL-CRUZ, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 06-CV-499-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security | ) |
| Administration,[1/] | ) |
| | ) |
| Defendant. | ) |

### OPINION AND ORDER[2/]

Pursuant to 42 U.S.C. § 405(g), Plaintiff Jaimee Espinal-Cruz (Plaintiff) appeals the decision of the Commissioner denying her Social Security and Supplemental Security Income disability benefits. Plaintiff asserts that the ALJ (1) violated Plaintiff's right to due process by failing to proffer post-hearing evidence to her; (2) failed to perform a proper determination at Steps Four and Five of the sequential evaluation process; and (3) failed to perform a proper credibility analysis. For the reasons discussed below, the Court hereby reverses and remands the decision of the Commissioner for further proceedings consistent with this opinion.

### 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was born on February 1, 1975 and was 28 years old on the alleged disability onset date. (R. 53, 590.) She has a high school education and past relevant work as a

---

[1/] Effective February 1, 2007, pursuant to Fed. R. Civ. P. 25(d)(1), Michael J. Astrue, Acting Commissioner of Social Security, is substituted for Jo Anne B. Barnhart as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 42 U.S.C. § 405(g) of the Social Security Act.

[2/] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

cook, waitress, assembly worker, warehouse laborer, bill collector, cashier, fast-food worker, and housekeeper. (R. 72, 92, 105, 110, 119, 590-95, 621.) She initially alleged that she became disabled on January 2, 2004, by epilepsy and seizures. (R. 53, 71.) She later alleged that anxiety, depression, a thyroid problem, an injury to her right hand, delusions, headaches, a bladder problem, weakness in her knees and arms, and post-traumatic stress were also disabling impairments. (R. 595-97, 606.)

Plaintiff filed her application for a period of disability, disability insurance benefits and supplemental security income on January 7, 2004. (R. 53-55.)[3/] After she was denied benefits at the initial and reconsideration levels, she filed a timely Request for Hearing. Administrative Law Judge (ALJ) Gene M. Kelly held the hearing on September 15, 2005 (*see* R. 583-631), and issued an unfavorable decision on March 23, 2006. (R. 18-27.) Plaintiff filed a Request for Review with the Appeals Council, and the Appeals Council denied Plaintiff's request on July 28, 2006. (R. 8-14.) Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. §§ 404.1520, 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment
> . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

---

[3/] Plaintiff filed an earlier application for disability insurance benefits on April 8, 2002, alleging that she became disabled on September 1, 2001. (R. 50-52.) That application was denied (R. 29, 32-34), and apparently Plaintiff did not file a request for reconsideration. (See R. 589.)

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[4]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by substantial evidence. See 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206

---

[4] Step One requires the claimant to establish that he is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 404.1510, 416.910 and 404.1572, 416.972). Step Two requires that the claimant demonstrate that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. See 20 C.F.R. §§ 404.1521, 416.972. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that his impairment or the combination of impairments prevents him from performing his past relevant work. A claimant is not disabled if the claimant can perform his past work. If a claimant is unable to perform his previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of his age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. See *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750.

"The finding of the Secretary[5] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750. This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

The ALJ found that Plaintiff had the following combination of impairments: seizures, depression, anxiety, post-traumatic stress disorder and personality disorder, as well as problems with her bladder, legs, arms, thyroid, hand, headaches, back and stomach. (R. 23.) However, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R.

---

[5] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L. No. 103-296. For the purpose of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner."

Pt. 404, Subpt. P, App. 1. (*Id.*)  He also found that Plaintiff had the residual functional capacity to lift and carry 20 pounds; stand and/or walk 6 hours in an 8-hour workday at 2 hour intervals; sit 6 hours in an 8-hour workday at 2 hour intervals; and occasionally climb, bend, stoop, squat, kneel, crouch, crawl, and operate foot pedals.  (R. 24.)  He also stated that she must avoid heat, low light, and noise.  His RFC included a slight limitation for her in fingering, feeling and grasping.   The ALJ deemed Plaintiff unable to work in environments where she would be exposed to rough and uneven surfaces, unprotected heights, and fast and dangerous machinery.  He also indicated that she requires easy access to restrooms.  Her work must be simple, repetitive, and routine.  Finally, she must have only limited contacted with public, coworkers and supervisors.  (*Id.*)

The ALJ found that the Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms, but her statements concerning the intensity, duration and limiting effects of her symptoms were not entirely credible.  (*Id.*)  He determined that Plaintiff could perform her past relevant work as a fast food worker, short order cook, fry cook, cashier, bill collector, assembly worker, and housekeeper.  (R. 26.)  Considering her age, education, work experience, and residual functional capacity, the ALJ held that jobs exist in significant numbers in the national economy that the Plaintiff can perform.  (*Id.*)  Accordingly, he concluded that Plaintiff was not under a "disability" as defined in the Social Security Act, from January 2, 2004, through the date of his decision, March 23, 2006.  (R. 27.)

## 4.  REVIEW

**A.    Post-Hearing Evidence**

At the end of the administrative hearing, the ALJ stated that he wanted to have a medical consultant perform a physical consultative evaluation of Plaintiff because he could not find a report of one in Plaintiff's file. (R. 629.)  Plaintiff went to the consultative examination on January 8, 2006 -- almost four months after the September 15, 2005 hearing. (*See* R. 372-81.)  Plaintiff claims that a report of the examination was never sent to her or her representative even though the ALJ used the report to deny her benefits. (*See* R. 24.)  Plaintiff asserts that the ALJ violated her right to due process by failing to proffer the post-hearing evidence to her.

The Social Security Administration's "Hearings, Appeals and Litigation Law Manual" (known as HALLEX) provides, in relevant part:

> If an ALJ receives new evidence after the hearing from a source other than the claimant, and the ALJ proposes to enter the evidence into the record as an exhibit, the ALJ must give the claimant and the claimant's representative the opportunity to review and comment on the evidence and to request a supplemental hearing unless:
> • the claimant or the representative knowingly waived the right to review the evidence and to appear at a supplemental hearing, or
> • the ALJ is prepared to issue a fully favorable decision.

HALLEX I-2-5-28, 1992 WL 601812 (S.S.A.).  There is no dispute that the ALJ did not give Plaintiff or her representative a chance to review and comment and there is no contention that either of the exceptions applied.

There is a contention by the Commissioner that, although the ALJ did not proffer the report to Plaintiff, the ALJ did not rely on it in formulating her RFC and thus, the omission did not prejudice Plaintiff.  The Commissioner maintains that the restrictions established

by the consultative examiner matched the limitations the ALJ set forth in this second hypothetical question to the vocational expert as well as the RFC the ALJ ultimately found. (*See* R. 625-26.) Consequently, the Commissioner argues, Plaintiff cannot show the need for a supplemental hearing or second opportunity for her representative to question the vocational expert. Nor can Plaintiff show that the outcome would have been different, argues the Commissioner.[6]

The policies and procedures established by the Commissioner in HALLEX do not require Plaintiff to prove that the omission was prejudicial. Further, the Tenth Circuit has specifically observed that

> [a]n ALJ's use of a post-hearing medical report constitutes a denial of due process because the applicant is not given the opportunity to cross-examine the physician or to rebut the report. . . . Moreover, such a practice exceeds the Secretary's statutory authority. The Secretary is clearly mandated by statute to determine a claimant's disability "on the basis of evidence adduced at the hearing."

*Allison v. Heckler*, 711 F.2d 145, 147 (10th Cir. 1983) (citations omitted). In *Yount v. Barnhart*, 416 F.3d 1233 (10th Cir. 2005), the Tenth Circuit found that a claimant was deprived of due process where the ALJ rendered his decision on the basis of a post-hearing examination of claimant without giving the claimant a chance to cross-examine the examining physician or otherwise rebut his report. *Id.* at 1236. Further, the Tenth Circuit held it was error for the district court to affirm the decision of an ALJ on

---

[6] Plaintiff points out that the consultative examiner found limitations that the ALJ did not include in his hypothetical: in particular, proscriptions from dust, fumes and gases or marked changes in heat or humidity. (R. 380.) More important, Plaintiff argues, the ALJ ignored the seizure description sheet which, if considered, would show that the Claimant met or equaled a listed impairment. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02. The Court need not decide at this point whether these arguments would ultimately prevail.

the ground that the claimant failed to make a good cause showing for the supplemental hearing where the claimant was given no notice of such a requirement. *Id.* at 1235. In light of these opinions, the Court concludes that the ALJ's reliance on the medical examiner's post-hearing report denied Plaintiff a full and fair hearing.

**B.     Steps Four and Five**

Plaintiff also asserts that the ALJ failed to perform a proper determination at Steps Four and Five of the sequential evaluation process. In particular, she points out discrepancies between the ALJ's findings and the vocational expert's testimony as to Plaintiff's past relevant work and other jobs in the regional and national economies she could perform, given the ALJ's hypothetical questions.

The ALJ posed three hypothetical questions to the vocational expert. The first question assumed that someone with Plaintiff's age, education and work experience could perform work at the medium, light and sedentary exertional levels, with no significant limitations for mental impairments. (R. 621-22.) The vocational expert testified that such an individual could return to past relevant work as a fast food worker, convenience store clerk, bill collector and housekeeper, in addition to performing other jobs in the regional economy. (R. 622-25.) The second hypothetical included mental impairments, as well as other restrictions. (R. 626-27.) The vocational expert testified in response that such an individual could still perform past relevant work as a housekeeper, and that unskilled jobs such as marker, labeler, and trimmer also remained available. (R. 626-27.)[7]

---

[7]   In his third hypothetical, the ALJ asked the vocational expert to assume that Plaintiff's testimony was credible and substantially verified by third party medical evidence which presented no significant contradictions to the her testimony. The vocational expert testified that she could not return to her past relevant work and there would be no jobs at any exertional or

In his written opinion, the ALJ adopted the RFC he presented to the vocational expert his *second* hypothetical question, but he found that Plaintiff could perform all of the past relevant work to which the vocational expert testified in response to the *first* hypothetical question posed by the ALJ. (*See* R. 24, 26.) The Commissioner argues that this was harmless error, as Plaintiff's past relevant work as a housekeeper was an answer to both hypothetical questions. Further, the Commissioner argues, the ALJ found that three other jobs remained available to Plaintiff at Step Five of the sequential evaluation process. The ALJ's error in failing to match his RFC to the jobs identified by the vocational expert might be subject to harmless error analysis but for his failure to proffer post-hearing evidence. The ALJ's determination at Steps Four and Five was improper.[8]

---

skill levels that the individual could perform. (R. 627.)

[8] Plaintiff's other arguments with regard to alleged errors by the ALJ at steps four and five are specious. It is true that ALJ's limitation of "simple, repetitive routine work" would preclude her from performing the housekeeper job because the housekeeper job has a reasoning level of 3. *See Dictionary of Occupational Titles ("DOT")* 321.137.010 (4th ed., rev. 1991). However, it would not preclude jobs such as the marker, labeler and trimmer, (identified by the vocational expert in response to the RFC adopted by the ALJ), which have a reasoning level of 2. *See id.* at 920.687-126, 976.687-018, 222.387-054, 209.587-010, 732.587-010, 734.687-094. The Tenth Circuit has equated "simple, routine work" with a reasoning level of 2. *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). *Cooper v. Barnhart*, which plaintiff cites as a Tenth Circuit decision for the proposition that simple, routine work is limited to a reasoning level of 1, was decided by <u>this</u> Court, the Northern District of Oklahoma, in an unpublished opinion entered before *Hackett*. *Cooper v. Barnhart*, No. 03-CV-665-J, 2004 WL 2381515 (N.D. Okla. Oct. 15, 2004). Plaintiff also argues that the ALJ erred in failing to analyze whether the job of "trimmer" existed in significant numbers in Oklahoma, but this argument is unsound because Plaintiff does not dispute that the jobs of marker and labeler exist in significant numbers in Oklahoma. Further, Plaintiff argues that the ALJ erred by ignoring the vocational expert's testimony that an individual with Plaintiff's Global Assessment of Functioning (GAF") score could not keep a job. This argument misstates the testimony of the vocational expert, who testified that an individual with Plaintiff's GAF score would "have a difficult time sustaining full-time employment" – not that it would be impossible. (*See* R. 628.)

9

**C.    Credibility**

Finally, Plaintiff argues that the ALJ did not perform a proper credibility analysis. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). "However, findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (alteration and quotation omitted). Some of the factors relevant to an assessment of credibility include attempts to find relief, use of medication, willingness to try any treatment prescribed, the use of crutches or a cane, regular contact with doctors, and the claimant's daily activities. *Luna v. Bowen*, 834 F.2d 161, 165-66 (10th Cir. 1987); *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 (S.S.A.).

The ALJ discussed Plaintiff's testimony regarding her ability to take care of her household chores, shop, take care of an infant son, and be involved with the women's ministry at her church. (R. 24.) He noted that her seizure activity was varied and based in part due to non-compliance with her medication. (*Id.*) He found that her alleged mental problems were not disabling based on evidence indicating that she had received no ongoing treatment for her alleged impairments and was taking no medications. (R. 25.) Further, a psychological consultative examination indicated that she had no impairment in concentration or memory, her thought processes were normal and she was operating at the high average level of intelligence. (*Id.*) He noted that Plaintiff alleged numerous other

10

alleged impairments but had not sought any long term treatment for those conditions. (*Id.*) Finally, he mentioned that Plaintiff's treating physicians did not place any functional restrictions on her activities that would preclude light work activity with the restrictions he found. (R. 26.)

Plaintiff argues that the ALJ ignored relevant evidence and made several critical errors in his credibility determination. For example, Plaintiff asserts that the ALJ failed to note a panic attack she suffered during the hearing. (*See* R. 604.) She also complains that the ALJ ignored the psychotherapy she received when she was 9 years of age and, in 1991, and 2001. (*See* R. 221, 322, 390.) She faults the ALJ for failing to note that, when she left psychotherapy at Family and Children's Services, she was transferred to Creoks for further therapy. (*See* R. 530.)  She argues that the ALJ failed to access records from Creoks and thus, he failed to develop the record.

In response to the ALJ's observations that Plaintiff took no medication for her mental problems, she claims that she took Paxil but could not tolerate it because it caused her to have panic attacks. (*See* R 444.) Further, Plaintiff asserts that the ALJ ignored evidence of seizures she suffered in 2001 (Pl. Opening Br., Dkt. # 13, citing R. 254, 313, 321), 2004, and 2005 (*id.*, citing R. 201-303, 335, 460, 500, 549, 558, 571.)

Many of these arguments are based on misstatements of the record. Plaintiff told various health care providers that she had been in treatment when she was 9 years old, in 1991, and 2001, but there is no corroborating evidence. (*See* R. 221, 322, 390.) The record shows that she was not actually transferred to Creoks, but apparently she merely told the clinician at Family & Children's Services when she terminated treatment that a court had ordered her to Creoks for testing. (*See* R. 530.) Plaintiff never alleged that she

11

actually went to Creoks, her representative did not request additional time to submit any records from there, and he made no request at the hearing for the ALJ to order such records.  Where there is no evidence that either Plaintiff or her counsel tried to obtain those medical records, the Court has some doubt about the relevance of the evidence and the existence of any prejudice she may have suffered from the ALJ's failure to obtain it. *Cf. Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (refusing to find that an ALJ committed legal error by failing to request treatment notes or records when the Court did not know whether such records were pertinent or available); *Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) (stating that, where a claimant argues that the ALJ failed to obtain existing evidence, it may be appropriate to require a claimant to prove prejudice by establishing that the missing evidence would have been important in resolving the claim.)

Other evidence does not support her assertion that she could not tolerate Paxil because of her anxiety attacks, or that the ALJ would have had reason to make that conclusion.  The evidence she cites in support simply has a notation on a form for "OB/GYN Department Labor and Delivery" that indicates "Anxiety attack, Paxil (.stopped.) under a line that reads Past Medical: Epilepsy."  (R. 444.)   It is true that the ALJ did not specifically mention the seizures Plaintiff claims to have suffered in 2001, but Plaintiff claims that her epilepsy caused her to be disabled as of January 2, *2004*. The ALJ did not mention all of the specific seizures she had in 2004, but he does reference that part of the record when he makes the general statement that her "seizure activity is varied and based in part due to non-compliance with her medication." (R. 24.)  He does not reference the seizures in 2005, but the Court notes that these were instances when Plaintiff asked her therapist not to come to her home for an appointment because of alleged seizure activity.

12

(R. 549, 558, 571.)  The evidence does not contradict the ALJ's determination, based on a lengthy discussion of the relevant Social Security ruling, that more specific medical evidence regarding her epilepsy from her treating physician would be necessary before the ALJ could find that she met a listing for epilepsy.  (*See* R. 25.)

Plaintiff takes issue with numerous other aspects of the ALJ's credibility determination, including his lack of discussion about the effect of her hypothyroidism on her ability to control her seizures, her alleged inability to afford her seizure medications, her alleged agoraphobia, and the impact of her past work history on her credibility.  She also challenges the ALJ's discussion of her daily activities and the lack of any functional restrictions placed on her by her treating physicians.  An ALJ must set forth the specific evidence he relies on in evaluating a claimant's credibility, but is not required to perform a "formalistic, factor-by-factor recitation of the evidence."  *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).  The ALJ adequately addressed many of the *Luna* factors in making his credibility findings, and he closely and affirmatively linked them to substantial evidence.  The Court finds no error with regard to the ALJ's credibility determination, but his failure to proffer post-hearing evidence to her and to perform a proper determination at Steps Four and Five of the sequential evaluation process lead the Court to conclude that the matter must be remanded.

## 5.  CONCLUSION

The Commissioner's decision denying Plaintiff's application for Social Security benefits does not follow correct legal principles and is not supported by substantial

evidence. Accordingly, the Court **reverses and remands** the decision of the Commissioner for further proceedings consistent with this opinion.

It is so ordered this 26th day of December, 2007.

Sam A. Joyner
United States Magistrate Judge